

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-1995

# Newman v GHS Osteopathic

Precedential or Non-Precedential:

Docket 94-2122

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Newman v GHS Osteopathic" (1995). *1995 Decisions.* Paper 187.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/187

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-2122


JEFFREY B. NEWMAN

v.

GHS OSTEOPATHIC, INC., PARKVIEW HOSPITAL DIVISION

Jeffrey B. Newman,

Appellant


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action. No. 94-0060)


Submitted under Third Circuit LAR 34.1(a)
June 27, 1995

BEFORE: MANSMANN, GREENBERG, and SAROKIN, Circuit Judges

(Filed: July 17, 1995)


George D. Walker, Jr.
Donna E. Baker
Larry Pitt & Associates
1918 Pine Street
Philadelphia, PA 19103

Attorneys for Appellant


A. James Johnston
Jonathan B. Sprague
Sidney R. Steinberg
Post & Schell
1800 JFK Boulevard
19th Floor
Philadelphia, PA 19103

Attorneys for Appellee


1

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

In this case under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117 (ADA), Jeffrey B. Newman appeals from the district court's October 20, 1994 order entering judgment against him and in favor of GHS Osteopathic, Inc.-Parkview Hospital Division, following a bench trial. The appeal raises significant issues regarding compliance with discovery obligations and the burden of proof under the ADA. We will affirm.

I.

We largely draw our statement of the facts from the district court's opinion. Prior to the layoff that led to this lawsuit, Newman worked as a physical therapy aide in Parkview's rehabilitation department. Newman suffers from a form of nocturnal epilepsy, and he takes medication several times a day to prevent the onset of seizures. The medication makes Newman drowsy, and therefore he sought to combine the 30-minute lunch break and the two 15-minute morning and afternoon breaks which Parkview granted into one hour-long break. Newman used this hour to nap and negate the medication's side effects. Although

2

Parkview's policy prohibited bunching the breaks, several other employees combined them as well.

In May 1992, Kamille Sprenkle of Rehab America, an independent contractor agency, began working with Parkview's Director of the Rehabilitation Department to assist in supervising and running the department. Soon thereafter, she began enforcing the policy against combining the breaks.[1] When Newman protested that he needed to combine the time for medical reasons, Sprenkle referred him to Jennifer Brown, Parkview's director of human resources. Brown, in turn, told Newman that to be exempt from the policy, he would need authorization from a hospital physician. Brown also agreed to exempt Newman from the policy pending the medical evaluation. App. 447. A physician "subsequently recommended that [Newman] be allowed to continue combining his breaks because such bunching was a reasonable medical necessity." App. 448.

Beginning in 1992, the hospital's financial situation began to deteriorate, and it instituted a reduction in hours for much of its staff, including Newman. Later that year, the hospital began planning more cuts, including layoffs. In February 1993, Ernest Perilli, Parkview's associate executive director of operations, determined that one full-time nonprofessional position in the rehabilitation department should be eliminated, and he consulted Sprenkle (who was on maternity

---

[1]The district court found that "at a January, 1993 meeting of the department heads, Sprenkle was told by her boss at Parkview that the policy against combining the breaks would now be enforced." App. 447.

3

leave) for assistance.  She in turn recommended that Parkview eliminate the position of full-time physical therapy aide. Newman was the only employee holding that position.  Effective February 19, 1993, the hospital laid off Newman and six other employees.

On February 5, 1994, Newman filed a complaint against Parkview in the district court, alleging that its decision to lay him off constituted unlawful discrimination under the ADA. Specifically, Newman alleged, among other things, that his layoff resulted from Sprenkle's irritation with his medical need to combine the breaks.  He contended that "[u]pon [his] exercise of his ability to continue his break consolidation, Ms. Sprenkle became belligerent in attitude with him."  Br. at 5.  He further supported his complaint with certain allegations of actions that occurred after the layoff, which he contended demonstrated that Parkview's proffered reasons for his layoff were pretextual.[2]

During pretrial discovery, Newman propounded interrogatories on Parkview seeking identification of each person Parkview believed had knowledge of his claims and each person it intended to call at trial.  Newman also sought to learn the

---

[2]For instance, Newman says he was told he could take a part-time position as a physical therapy aide without benefits but that he would have to bump his friend out of the position.  The district court found that Newman did not take the position because he did not want to cause his friend to be laid off. Newman also points out that soon after his one-year right to recall had expired, a part time aide was given a full time position.  The district court attributed this latter development to the fact that Parkview had hired a new independent contractor to supply professional positions to the rehabilitation department and that "the new contractor's aggressive marketing practices . . . resulted in a much higher volume of patients in the rehabilitation department at Parkview."  App. 451.

4

substance of each prospective witness' testimony.  Parkview responded by, among other things, referring to its self-executing disclosures, objecting to the scope of the interrogatory requests, and stating that it had not identified its trial witnesses.  Its self-executing disclosures stated that:

> Defendant believes the following persons are reasonably likely to have information that bears significantly on the claims or defenses in this matter:

> Jennifer M. Brown

> Plaintiff's job performance; the Hospital's attempts to accommodate Plaintiff's alleged disability; Hospital-wide layoff of February, 1993; Hospital policies and procedures.

> Kamille Sprenkle

> Plaintiff's job performance; the decision to eliminate the position of full-time Physical Therapy Aid; conversations with Plaintiff regarding his request for an accommodation.

> Ernest Perilli

> Hospital-wide layoffs of February, 1993; Hospital policies and procedures.

Newman claims that he never received this list and he further observes that the names and the substance of their testimony were not supplied in response to his interrogatories.  Therefore, he made an in limine motion under Fed. R. Civ. P. 37 to exclude the testimony of Perilli and Brown on the ground that their names and the substance of their testimony were not properly disclosed

5

during pretrial discovery. On October 11, 1994, the district court held a hearing at which it heard argument from both sides. The court concluded that Newman received either the list itself or the cover letter attaching the list. It further determined that even if the latter was the case, it should have been obvious that an enclosure was missing, and Newman should have contacted Parkview's counsel to obtain the missing enclosure. The court therefore denied Newman's motion, and the case proceeded to a non-jury trial at which Perilli and Brown testified on October 11 and 12.

On October 20, the court issued a bench opinion setting forth its findings of fact and conclusions of law. The court found that Parkview's decision was motivated by legitimate economic reasons arising from its deteriorating financial situation. It further found that Sprenkle harbored no animosity toward Newman and only reluctantly recommended that Newman's position be eliminated. Consequently, that same day the court entered judgment in Parkview's favor. Newman timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Newman's primary contention is that the district court erred by permitting Perilli and Brown to testify. He claims that Federal Rules of Civil Procedure 26(a), 26(e) and 37(c)(1) required the district court to exclude their testimony.

As amended in 1993, Fed. R. Civ. P. 26(a)(1) provides for self-executing disclosures, as it requires a party upon its

6

own initiative to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts . . . ." Rule 26(a)(3)(A) requires disclosure of "the name . . . of each witness, separately identifying those whom the party expects to present and those whom the party may call if the need arises." Furthermore, Rule 26(a)(5) provides that a party may discover additional matter through, <u>inter</u> <u>alia</u>, written interrogatories. Under Rule 26(e), a party is under a continuing obligation to supplement its discovery responses.

As also revised in 1993, Rule 37(c)(1) provides that a party who

> without substantial justification fails to
> disclose information required by Rule 26(a)
> or 26(e)(1) shall not, unless such failure is
> harmless, be permitted to use as evidence at
> trial, at a hearing, or on a motion any
> witness or information not so disclosed.  In
> addition to or in lieu of this sanction, the
> court, on motion and after affording an
> opportunity to be heard, may impose other
> appropriate sanctions.

Rule 37 is written in mandatory terms, and "is designed to provide a strong inducement for disclosure of Rule 26(a) material."  <u>Harlow v. Eli Lilly & Co.</u>, 1995 U.S. Dist. LEXIS 7162 at *7 (N.D. Ill. May 25, 1995).  Nonetheless, the rule expressly provides that sanctions should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose was harmless.  Thus, the rule does not leave district courts without discretion.  <u>See</u>, <u>generally</u>, Fed. R. Civ. P. 37(c) (Advisory Committee Notes).  In fact, one court has held

that "[n]otwithstanding Rule 37(c), the district court may be found to have abused its discretion if [its] exclusion of testimony results in fundamental unfairness in the trial of the case." Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir.) (emphasis added), cert. denied, 115 S.Ct. 511 (1994); see also Bronk v. Ineichen, 54 F.3d 425, 432 (7th Cir. 1995) (interpreting Rule 37(c)(1)) (In ruling on motion to call witness not previously identified, "'district court should consider prejudice or surprise to opposing party, ability of party to cure prejudice, likelihood of disruption, and moving party's bad faith or unwillingness to comply.'") (citation omitted). For our purposes, then, even under Rule 37, "[t]he imposition of sanctions for abuse of discovery under Fed. R. Civ. Pro. 37 is a matter within the discretion of the trial court." Orjias, 31 F.3d at 1005; Doe v. Johnson, 53 F.3d 1448, 1464 (7th 1995) ("We review the district court's decision to impose Rule 37 sanctions for abuse of discretion.").

We find no abuse of discretion here. After hearing argument from both sides, the district court concluded that the witnesses were identified in Parkview's self-executing disclosures and that Newman, at a minimum, received the covering letter referring to the list, if not the list itself. Thus, the court concluded that Newman should have sought the list if he had not received it. The court therefore believed that Parkview's possible failure to supply the information in its self-executing disclosures or to disclose it in response to Newman's interrogatories should not have prejudiced him and therefore was

8

harmless.  The court's decision is consistent with the Advisory Committee Notes to the 1993 amendments, which state that the "harmless violation" provision was "needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties. . . ."  Here, there is no reason to believe that Parkview acted in bad faith; and the court found that Newman knew the names of its witnesses and the scope of their relevant knowledge well before trial.  In the circumstances, the district court did not abuse its discretion in refusing to exclude the testimony.

III.

Newman next argues that the district court placed an incorrect burden of proof upon him.  As an initial matter, we must address the district court's reliance on cases governing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination in Employment Act, 29 U.S.C. §§621–34, to determine the standards for indirectly proving disparate treatment under the ADA.[3]  The parties on appeal assume

[3] The district court cited only Griffiths v. CIGNA Corp., 988 F.2d 457 (3d Cir.), cert. denied, 114 S.Ct. 186 (1993), a Title VII case.  But the standards enunciated under Title VII and the ADEA for these types of cases, commonly referred to as pretext cases, are derived from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), and proceed as follows:

First, the plaintiff has the burden of
proving by the preponderance of the evidence
a prima facie case of discrimination. Second,
if the plaintiff succeeds in proving the
prima facie case, the burden shifts to the

9

that this caselaw informs the standards of causation under the ADA and we now so hold.

In the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose -- to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well. Indeed, we routinely use Title VII and ADEA caselaw interchangeably, when there is no material difference in the question being addressed. DiBiase v. SmithKline Beecham Corp., 48 F.3d 719, 724 n.5 (3d Cir. 1995). And, the provisions of the ADA itself recognize the parallel nature of the statutes, as they provide that

> [t]he powers, remedies, and procedures set forth in [Title VII] shall be the powers,

---

> defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' [McDonnell Douglas, id.], at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id. at 804, 93 S.Ct., at 1825.

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093 (1981). Of course, at the trial stage, the only relevant question for the factfinder is whether the plaintiff has proven intentional discrimination, and the plaintiff can try to persuade the trier of fact of this by proving that the employer's proffered reasons for the adverse employment decision are pretexts for discrimination. The trier of fact is not required, however, to find intentional discrimination simply because it does not believe the employer's explanation. See Miller v. CIGNA Corp., 47 F.3d 586, 596-97 (3d Cir. 1995) (in banc).

10

> remedies and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C. § 12117(a).

In accordance with the foregoing principles, courts addressing the allocations of burdens of proof and persuasion under the ADA uniformly have looked for guidance to Title VII and ADEA caselaw. See Ennis v. National Ass'n of Business and Educ. Radio, Inc., 53 F.3d 55, 57 (4th Cir. 1995) (holding that Title VII burden-shifting rules apply in ADA pretext case); DeLuca v. Winer Indus., Inc., 53 F.2d 793, 797 (7th Cir. 1995) (assuming that Title VII prima facie case and burden shifting method applies under ADA); Aucutt v. Six Flags Over Mid-America, Inc., 869 F. Supp. 736, 743 (E.D. Mo. 1994) (applying Title VII prima facie case standards to ADA); West v. Russell Corp., 868 F. Supp. 313, 316 (M.D. Ala. 1994) ("Generally . . . federal courts have applied the settled principles of employment discrimination law [under Title VII] to the ADA") (citing cases); Doe v. Kohn Nast & Grav, P.C., 862 F. Supp. 1310, 1318 n.5 (E.D. Pa. 1994); Braverman v. Penobscot Shoe Co., 859 F. Supp. 596, 603 (D. Me. 1994); See also EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1995 U.S. App. LEXIS 12139 at * 5 (7th Cir. May 22, 1995) (applying Title VII and ADEA caselaw to interpretation of individual liability under ADA); Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc., 37 F.3d

11

12, 16 (1st Cir. 1994) (seeking guidance from Title VII caselaw to determine definition of "employer" under ADA).

In addition, courts routinely employ the Title VII burden-shifting rules in pretext cases brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., which prohibits disability discrimination in public employment.  See Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994); Barth v. Gelb, 2 F.3d 1180, 1185-86 (D.C. Cir. 1993), cert. denied, ____ U.S. ____, 114 S.Ct. 1538 (1994); Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511, 514 (2d Cir. 1991), cert. denied, ____ U.S. ____, 113 S.Ct. 54 (1992); Smith v. Barton, 914 F.2d 1330, 1339-40 (9th Cir. 1990), cert. denied, 501 U.S. 1217, 111 S.Ct. 2825 (1991).  As the ADA simply expands the Rehabilitation Act's prohibitions against discrimination into the private sector, Congress has directed that the two acts' judicial and agency standards be harmonized.  See 29 U.S.C. §§ 791(g), 793(d), 794(d); 42 U.S.C. § 12117(b).  Therefore, the district court properly looked to ADEA and Title VII caselaw for guidance.

The court in this case relied in particular on Griffiths v. CIGNA Corp., 988 F.2d 457 (3d Cir.), cert. denied, 114 S.Ct. 186 (1993), which it interpreted as requiring a plaintiff in a pretext case to prove that the illicit motive was the sole cause of the adverse employment decision.  We since have clarified that in pretext cases a plaintiff need prove only that the illicit factor "played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process."  Miller v. CIGNA Corp., 47 F.3d

12

586, 598 (3d Cir. 1995) (in banc).  Nevertheless, the court's reliance on Griffiths did not prejudice Newman, because it found that his disability played no role in Parkview's decision.  In its own words:

> Plaintiff's dismissal by the defendant resulted from a bona-fide hospital-wide reduction in force because of financial difficulty and not from any discrimination on the part of defendant against plaintiff due to plaintiff's disability.  The plaintiff's epilepsy was not the sole cause, was not a determinative cause, and played no role whatsoever in the defendant's decision to terminate plaintiff's position or to lay off the plaintiff.

App. 453-54.  Thus, irrespective of the applicable test, Newman could not prevail.[4]

IV.

In view of the foregoing conclusions, we will affirm the judgment of the district court.

---

[4]Newman argues in the alternative that the district court's findings of fact are not supported by the record.  The argument is without merit.  "We accept the district court's findings of fact unless they are clearly erroneous." Oberti v. Board of Educ., 995 F.2d 1204, 1220 (3d Cir. 1993); Country Floors, Inc. v. Partnership of Gepner and Ford, 930 F.2d 1056, 1062 (3d Cir. 1991).  The court found the defendant's witnesses to be credible, and essentially believed Parkview's explanation of Newman's layoff.  It is well settled that "[c]redibility determinations that underlie findings of fact are appropriate to a bench verdict," Country Floors, 930 F.2d at 1062, and rarely will be disturbed.  In this case, the district court's findings are adequately supported by the testimony and we decline to disturb them.