NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1126
_____

ARCHWAY INSURANCE SERVICES,

Appellant

v.

JAMES RIVER INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-02711)
District Judge:  Honorable Thomas N. O'Neill, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 14, 2012

Before:  SCIRICA, FISHER and JORDAN, *Circuit Judges*.

(Filed: December 21, 2012  )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Archway Insurance Services, LLC appeals from the District Court's order entering

judgment after a bench trial on its breach of contract claim in favor of James River

Insurance Co.  For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In this case, Archway, an insurance broker, seeks to recover from James River, an insurance company, a $158,000 payment made under a guarantee by Archway to Bank Direct Capital Finance, LLC, a lender, for James River's failure to refund an unearned premium for part of the term of a general and professional liability insurance policy that Archway placed with James River for The Ardsley Group, Inc., a management company, on Ashton Hall, Inc., a nursing home business, in 2007. In exchange for this guarantee payment, Bank Direct assigned Archway the right to recover the unearned premium based on James River's failure to cancel the policy at Ardsley's request. Archway sued James River in the Philadelphia County Common Pleas Court, and James River removed the case to the District Court. After a bench trial on its breach of contract claim, the District Court held against Archway, reasoning that James River was not liable because although Ardsley had cancelled the policy, it impliedly waived its right to recover the unearned premium through its post-cancellation conduct. Archway timely appealed.

II.

The District Court had jurisdiction over this case under 28 U.S.C. § 1332(a)(1). We have jurisdiction over this appeal under 28 U.S.C. § 1291. After a bench trial, "we

2

review [a] [d]istrict [c]ourt's findings of fact for clear error and its conclusions of law *de novo*." *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 156 (3d Cir. 2010) (quotation omitted). We review a district court's rulings on the admissibility of evidence and the imposition of discovery sanctions for abuse of discretion. *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995).

## III.

Archway claims that the District Court erred in determining that Ardsley impliedly waived its right to the return of any unearned premium by working with Reliant Healthcare Management, Inc., Ashton Hall's managing agent, to pay premium installments to Bank Direct under a finance agreement and by renewing the Ashton Hall insurance policy with James River in 2008. Archway also contends that the District Court abused its discretion in allowing Nathan Niles, the Vice President of Finance for Reliant, to testify. We address these arguments in turn.[1]

## A.

Archway argues that the District Court erred in determining that Ardsley impliedly waived its right to the return of any unearned premium through its post-cancellation

---

[1] Because we affirm the District Court's ruling on each of these issues, we need not address James River's proposed alternative basis for partially affirming the order, namely, that the Pennsylvania Medical Care Availability and Reduction of Error Act, 40 Pa. Stat. § 1303.747, prevented the cancellation of the professional liability portion of the insurance policy because the Insurance Commissioner of the Commonwealth did not receive a written notice of cancellation.

conduct. Under Pennsylvania law,[2] a waiver "is the act of *intentionally* relinquishing or abandoning some known right, claim or privilege." *Brown v. Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962). "'To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it.'" *Commonwealth ex rel. Corbett v. Griffin*, 946 A.2d 668, 679 (Pa. 2008) (quoting *Brown*, 186 A.2d at 401). The waiving party's intent is controlling, *Brown*, 186 A.2d at 401 n.3, and it may be implied by "undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assocs.*, 610 A.2d 499, 501 (Pa. Super. Ct. 1992).

Archway correctly notes that the finance agreement imposed an independent contractual obligation on Ardsley to pay premium installments to Bank Direct. But the record also reflects that the agreement, which was signed by Stanley Segal, Ardsley's owner, stated that if Ardsley failed to pay an installment, Bank Direct could cancel the insurance policy. Further, Ardsley received four cancellation notices, at least three of which were brought to Segal's attention, which explicitly threatened that Bank Direct would cancel the policy if late installments were not paid. Notwithstanding Segal's knowledge that he could cancel the policy by simply ignoring the notices, he personally collaborated with Niles at least twice to ensure that late installments were paid. Segal's

---

[2] The parties agree that Pennsylvania law applies to this case.

4

conduct shows an intent to prevent Bank Direct from cancelling the policy that is inconsistent with Ardsley's right to the return of any unearned premium.

Archway also claims that the renewal of the insurance policy cannot be attributed to Ardsley because Fifty Jersey, LLC, another management company, owned Ashton Hall in March 2008. However, Segal did not sell Ashton Hall until April 2008, and the insurance application names Ardsley as an insured. The application also indicates that it is for the renewal of an existing policy rather than for the issuance of a new policy and states that the 2008 policy was scheduled to begin on the same date that the 2007 policy was scheduled to end, confirming that the new policy was, in fact, a renewal of the old policy. Ardsley's affirmative act of renewing the policy with James River shows its intent to abandon its right to the return of any unearned premium.

Archway finally contends that James River was not prejudiced by Ardsley's conduct because there was no evidence of a post-cancellation claim on the insurance policy. As an initial matter, an email sent in December 2008 from James River to All Risks, Ltd., another insurance broker, states that claims were made against the 2007 policy, albeit at an unspecified time. Moreover, the policy could not have been renewed if it had been cancelled, and James River may have offered Ardsley the renewal on more advantageous terms than a new policy. Because Ardsley solicited and James River issued the 2008 policy as a renewal of the 2007 policy, Ardsley's post-cancellation conduct prejudiced James River. Accordingly, we agree with the District Court that Ardsley

5

impliedly waived its right to the return of any unearned premium, and thus, that James River did not breach the policy.

B.

Archway also argues that the District Court abused its discretion in admitting Niles's testimony based on James River's alleged failure to identify Niles in its required initial disclosures, its required pretrial disclosures, and its interrogatory responses. Under the Federal Rules of Civil Procedure, a party must: (1) disclose "each individual likely to have discoverable information," Fed. R. Civ. P. 26(a)(1)(A)(i); (2) disclose "each witness," *id.* at 26(a)(3)(A)(i), "at least 30 days before trial," *id.* at 26(a)(3)(B); and (3) "supplement or correct its [required] disclosure or [interrogatory] response," *id.* at 26(e)(1). When a party does not comply with these rules, "[it] is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Id.* at 37(c)(1).

Here, Archway claims that James River neglected to name Niles in its initial disclosures or in its response to an interrogatory about the identity of its witnesses. Archway also contends that James River never supplemented its disclosures or responses with Niles's information. However, as the District Court correctly noted, James River identified Niles as an anticipated witness in a pretrial memorandum filed well over thirty days prior to trial. *Archway Ins. Servs., LLC v. James River Ins. Co.*, No. 2-09-cv-02711, 2011 U.S. Dist. LEXIS 143596, at \*13 n.3 (E.D. Pa. Dec. 14, 2011). Therefore, the

6

District Court did not abuse its discretion in refusing to exclude Niles's testimony. *See*

*Newman*, 60 F.3d at 156 (holding no abuse of discretion where district court refused to

exclude witnesses' testimony because party's possible failure to disclose witnesses in

self-executing disclosures and in interrogatory responses was harmless since opponent

knew of witnesses "well before trial").

IV.

For the reasons stated above, we will affirm the order of the District Court.