NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1836
_____

MANUEL MATOS,

Appellant

v.

MERCK & COMPANY, INC.
_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-13-cv-02648
District Judge: The Honorable Juan R. Sanchez

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 29, 2016

Before: SMITH, HARDIMAN, and SLOVITER, Circuit Judges

(Filed: March 7, 2016)
_____

OPINION*
_____


SMITH, Circuit Judge.

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This is an employment discrimination and retaliation case in which the plaintiff alleges that the defendant passed him over for multiple openings due to his race, national origin, and/or disability.

**I.**

Manuel Matos, a Hispanic and a native of Puerto Rico, worked as a union pipefitter in Merck & Company's West Point, Pennsylvania, facility from May of 1999 until September of 2007. In September of 2007, Matos applied for, and was hired as, a second-shift supervisor on the Vial Filling Line located at the same facility. Approximately six months into the new position, Matos' performance was already under significant scrutiny. For example, as a result of an incident occurring in late March 2008, Matos' supervisor, Timothy Cooper, issued to Matos, as well as to his peer first- and third-shift supervisors, a memorandum reprimanding Matos and the other supervisors for violations of company safety protocol. Also beginning around March of 2008, Cooper became concerned with other aspects of Matos' performance as a supervisor, and began working with the human resources department to determine how to address these concerns. It was decided that Cooper would draft and deliver to Matos a "Performance Expectations Memo" informing Matos of the areas needing "substantial improvement," and warning Matos that failure to achieve this improvement could ultimately result in his termination. Although Cooper never ended up delivering this memorandum to Matos – because, as will be explained below, Matos began disability leave before the memorandum was completed – a copy was placed in his personnel file and was accessible by human resources employees.

Due to the stresses associated with his new position, Matos took short-term disability leave beginning in April of 2008. This leave lasted until he resigned from the company in October of 2008 to take a position as a pipefitter with Schering-Plough, then a Merck competitor. Just three days before beginning his employment at Schering-Plough, and without previously informing anyone at Merck, Matos delivered his letter of resignation and employee badge to a Merck security guard.[1]

Not long into his new employment with Schering-Plough, and due in part to the longer commute from his home in Pennsylvania to Schering-Plough's New Jersey facility, Matos began applying for union pipefitter positions at Merck's West Point facility, and continued applying for such positions after Merck acquired Schering-Plough in November of 2009. At least one Merck manager, Tom Guellich, expressed interest in having Matos return to work for him as a pipefitter. Nevertheless, Matos was never given an interview for any of the approximately nine positions to which he applied.[2] All of the individuals hired to fill these positions were white men with no prior experience working at Merck.

After these failed applications, Matos filed an internal complaint of discrimination with the company's Office of Ethics, stating that he was "forced to conclude" that since his "former associates within Merck want my return to the plumber/pipefitter position,"

---

[1] Matos claims that he originally intended to hand the letter and badge directly to someone in human resources but opted instead to give them to the security guard only after he "wait[ed] and [he] waited and [he] waited" for someone from human resources to meet him at the security checkpoint.

[2] Indeed, someone from Merck's human resources department told Guellich that Matos "d[idn't] even stand a chance of getting an interview," though that person would not tell Guellich why.

and because his "work as a plumber/pipefitter was excellent," "there is no legitimate business reason as to why I cannot be rehired as a plumber/pipefitter within Merck." Instead, he assumed that it must have been on account of his race, national origin, or perceived disability.

As a result of this complaint, Charles Brown of the Office of Ethics conducted an internal investigation to determine why the company did not rehire Matos. Brown interviewed employees in Merck's human resources department as well as the Merck manager "most aware of [Matos'] previous behavior and performance" at Merck. These employees informed Brown that, through their own digging both at the time Matos was being considered for the interviews and later in response to Brown's inquiries, they learned that others thought Matos "was not a good pipefitter," that Matos had serious performance deficiencies during his time as a supervisor, and that Matos had tendered his resignation from the company in a way others deemed unprofessional. Brown therefore concluded that "the reason [Matos] was not interviewed for the new pipe fitters jobs was not related to his disability, race or national origin," but rather was "based on his previous performance issues and the way that he left Merck previously."

Matos then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission. After the EEOC issued to him a notice of right to sue, Matos brought the present action, alleging race, national origin, and/or disability discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e et seq.), the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 et seq.), and the

4

Pennsylvania Human Relations Act ("PHRA") (43 Pa. Stat. § 951 et seq.). He also asserted claims of retaliation under each of the foregoing statutes as well as pursuant to 42 U.S.C. § 1981. Merck filed a timely motion for summary judgment as to all claims. The District Court held that Matos could point to no facts in the record on which a reasonable jury could rely to conclude that Merck's articulated business reasons for not rehiring Matos were mere pretext for unlawful discrimination. The District Court therefore granted Merck's motion in its entirety.

Matos appeals from this grant of summary judgment, raising two issues for our consideration: first, whether the District Court erred in concluding that Matos failed to establish that Merck's articulated business reasons for not rehiring Matos were pretextual; and second, whether the District Court erred in concluding that Matos did not establish his retaliation claim under the ADA.

## II.[3]

"We exercise plenary review over the District Court's grant of summary judgment and apply the same standard that the District Court should have applied." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (internal quotation marks and citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences from the evidence must

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

5

be drawn in his favor. *Conopco, Inc. v. United States*, 572 F.3d 162, 165 (3d Cir. 2009).

After reviewing the record and applying the above standard, we will affirm for substantially the same reasons stated by the District Court in its memorandum opinion.

All of Matos' claims are governed by "[t]he familiar *McDonnell Douglas* burden shifting analysis." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (Title VII, § 1981, and PHRA discrimination claims); *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995) (ADA discrimination claim); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (ADA retaliation claim). Under this framework, Matos "bears the initial burden of establishing a prima facie case by a preponderance of the evidence." *Sarullo*, 352 F.3d at 797. If he can do this, then Merck must "articulate some legitimate, nondiscriminatory reason for" its decision not to rehire Matos. *Id*. (quoting *McDonnell Douglas*, 411 U.S. at 802). If Merck does this, the burden shifts back to Matos to demonstrate, again by the preponderance of the evidence, that Merck's articulated business reasons "were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Id*.

In order to avoid summary judgment at the "pretext" stage of the framework, Matos "must point to some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). It is not enough for Matos to show that Merck's articulated reasons for not rehiring him

6

were unwise or mistaken, *see id.* at 765; rather, Matos must point to evidence in the record sufficient to "allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id*. at 764 (citation omitted). This can be done by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Id*. at 765.

Although the standard for demonstrating pretext "places a difficult burden on the plaintiff," *id.,* it is necessary in order to balance "the goal of all discrimination law" against "our society's commitment to free decisionmaking by the private sector in economic affairs." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992).

We agree with the District Court that, even assuming Matos can establish prima facie claims of race, national origin, and/or disability discrimination, or of retaliation under the ADA, he simply has not pointed to any evidence that would allow a reasonable jury to conclude that Merck's articulated reasons for not rehiring him as a pipefitter – various performance deficiencies both as a pipefitter and in his role as supervisor, including the March 2008 incident involving a violation of Merck safety protocols, and the seemingly unprofessional manner in which he left the company – were pretextual. The closest Matos comes to meeting this "difficult burden" are statements in two emails, both sent *after* Matos was turned down for the interviews and had filed his internal complaint with Merck. In the first, a human resources employee, Michelle Thrush, wrote

7

to another Merck employee about Matos and referred to him as "Manny" Matos, even though Matos does not go by that nickname. In another email, in response to a question from Thrush about whether he knew anything about Matos, a Merck employee named William Flear said he had heard from others that Matos "went off the deep end – figuratively (nerves) and left the Company." Nevertheless, the District Court properly held that neither of these pieces of evidence provides an adequate basis for a finding of pretext since there is no evidence that any of the relevant decisionmakers ever called him by the nickname "Manny" or that they "shared—or were even aware of—th[e] perception" that Matos suffered "some sort of nervous condition." *Matos v. Merck & Co.*, No. CIV.A. 13-2648, 2015 WL 894253, at *8 n.23, *9 n.24 (E.D. Pa. Mar. 3, 2015).

## III.

Matos repeatedly states throughout his brief that what Merck's true motivations were for its decision not to rehire Matos "is a state of mind issue" that should be left to a jury, not to the judge. While the question whether an employer's stated reasons for taking an adverse employment action against the plaintiff are pretextual is undoubtedly a question of fact to be decided at trial by the jury, at the summary judgment stage the plaintiff must at least point to evidence in the record on which a *reasonable* jury could base a finding of pretext. This Matos has failed to do. We will therefore affirm the judgment of the District Court.