**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

———————

No. 96-2835

———————

| | |
|---|---|
| Royce Doane, | * |
| | * |
| Plaintiff-Appellee, | * Appeal from the United States |
| | * District Court for the |
| v. | * District of Nebraska. |
| | * |
| City of Omaha, | * |
| | * |
| Defendant-Appellant. | * |

———————

Submitted: February 10, 1997

Filed: June 16, 1997

———————

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and
BATTEY,[1] District Judge.

———————

HANSEN, Circuit Judge.

---

[1]The HONORABLE RICHARD H. BATTEY, Chief Judge, United States
District Court for the District of South Dakota, sitting by designation.

Royce Doane, a former Omaha police officer, brought this suit against the city of Omaha, Nebraska, for discriminating against him on the basis of his disability, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12100-213 (1994).  A jury found in favor of Doane, and the city of Omaha appeals the district court's[2] denial of its motion for judgment as a matter of law.  The city also claims error in the district court's refusal to use its requested jury instruction and in the remedies awarded.  We affirm.

## I.

Royce Doane brought this suit against the city of Omaha, claiming that the city discriminated against him on account of his disability when it failed to rehire him as a police officer.  Doane had been a police officer in Omaha from June 30, 1973, until June 2, 1984.  Two years into his employment, in 1975, Doane lost vision in one eye due to glaucoma.  With glasses, his overall vision is corrected to 20/20, though he actually is seeing out of only one eye.  He reported the blindness to his immediate command officer and took some medical leave for treatment, but he continued working successfully and competently as a police officer for nine years after the onset of this condition.  During those nine years, Doane performed all the duties required of a police officer and consistently attained qualification as an expert in the use of firearms.

In 1984, Doane was asked to undergo an eye examination, after which he was advised that his career was over.  Doane was given a choice between resigning with a small pension or applying for a 911 communications job.  Doane took the 911 position and later also worked for a time as a jailor. Doane made several requests for re-

---

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, presiding over the case by the consent of the parties.  28 U.S.C. § 636(c).

employment as a police officer, but each was denied on account of his blindness in one eye.

Relevant to this suit, Doane applied for re-employment as an Omaha police officer on August 12, 1992.  The job notice to which Doane replied listed vision as a special requirement of the job and stated the following:

> Vision must be not less than 20/200 using both eyes without squinting, correctable to 20/20 using both eyes without squinting.  Applicants must also possess normal color perception and have no evidence of irreversible disease which will affect the person's sight.

(Appellant's App. at 64.)  The city asserted that the "using both eyes" language meant that an applicant must have binocular vision -- the ability to see out of each eye.  The city employed police officer recruits other than Doane for its training class, which began on November 30, 1992.  On July 23, 1993, the city personnel director denied Doane's request for re-employment.  The city rejected Doane's application on the basis of Chief of Police Skinner's conclusion that Doane's vision problem was a significant limitation.  Specifically, Chief Skinner thought that Doane's lack of peripheral vision in one eye would significantly limit his ability to perform as a police officer.

Doane filed a discrimination charge with the Nebraska Equal Opportunity Commission and the United States Equal Employment Opportunity Commission.  The Nebraska Equal Opportunity Commission required the city to re-employ Doane, but the city personnel director refused to do so.  Consequently, Doane brought this ADA suit, which was tried to a jury.  Doane's medical experts testified that binocular vision is not

3

required to satisfy the vision standard set forth in the 1992 job notice and that Doane's visual abilities sufficiently satisfy the requirements of that notice.

The city made an oral motion for judgment as a matter of law at the close of the plaintiff's evidence and renewed its motion at the close of the case. The district court overruled the motions and submitted the case to the jury. The jury returned a verdict in favor of Doane, awarding compensatory damages (including neither back nor front pay) in the amount of $50,000. The district court denied the city's post-trial motion for judgment as a matter of law or a new trial and awarded Doane $40,000.20 in back pay and $10,874.77 in back pension benefits. Additionally, the district court ordered reinstatement by requiring the city to allow Doane to enter police recruit training. The city appeals.

**II.**

We review de novo the district court's denial of a motion for judgment as a matter of law, using the same standards as applied by the district court. Varner v. National Super Markets, Inc., 94 F.3d 1209, 1212 (8th Cir. 1996), cert. denied, 117 S. Ct. 946 (1997). We view all facts and resolve any conflicts in favor of the jury verdict, giving Doane the benefit of all reasonable inferences. Id. "It is well settled that we will not reverse a jury's verdict for insufficient evidence unless, after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party." Ryther v. KARE 11, 108 F.3d 832,

836 (8th Cir. 1997) (en banc), <u>petition for cert. filed</u>, 65 USLW 3694 (U.S. Apr. 4, 1997) (No. 96-1571).

The ADA generally protects "a qualified individual with a disability" from discrimination on the basis of that disability in matters of job applications and hiring, among other aspects of employment. 42 U.S.C. § 12112(a). To obtain relief under the ADA, a plaintiff must establish that he is (1) a disabled person within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability. See <u>Benson v. Northwest Airlines, Inc.</u>, 62 F.3d 1108, 1112 (8th Cir. 1995); <u>Wooten v. Farmland Foods</u>, 58 F.3d 382, 385 (8th Cir. 1995).

## A.  Disabled within the meaning of the ADA

The city contends that in spite of Doane's blindness in one eye, he is not a disabled person within the meaning of the ADA. The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual," or having "a record of such an impairment," or when an individual is "regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, <u>seeing</u>, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (emphasis added). Factors to consider in determining whether a disability has substantially limited a major life activity include "the nature and severity of the impairment," "the duration or expected duration of the impairment," and "the permanent

or long term impact of or resulting from the impairment.  29 C.F.R. § 1630.2(j)(2).  See Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996).

The agency's interpretive guidance on the ADA explains that "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."  29 C.F.R. pt. 1630, appendix § 1630.2(j).   "[A]n impairment is substantially limiting if it significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity."   29 C.F.R. Pt. 1630, App. § 1630.2(j).  Additionally, "[t]he determination of whether the individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices."   Id.   See also Harris v. H & W Contracting Co., 102 F.3d 516, 520-21 (11th Cir. 1996) (holding that the ADA interpretive guidelines are based on a permissible construction of the statute); Sicard v. City of Sioux City, 950 F. Supp. 1420, 1428-39 (N.D. Iowa 1996) (same).

Doane experiences total permanent blindness in one eye due to glaucoma.  See Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 n.2 (4th Cir. 1997) (noting that "both glaucoma and blindness . . . can be disabilities").  He presented evidence that the loss of vision in one eye constitutes a 25% disability of the visual system and a 24% whole body impairment, according to the American Medical Association.  Doane's medical experts testified that Doane's blindness in one eye substantially limits his major life activity of seeing.  The evidence demonstrated that Doane cannot sense depth in

6

the same manner as persons with binocular (two-eyed) vision, and his peripheral vision is limited due to his impairment.

The city argues that Doane's impairment does not substantially limit the major life activity of seeing because Doane has learned to adapt and accommodate himself to his impairment. Doane's corrected vision is 20/20. His medical experts testified that his brain has learned to work with environmental clues to develop his own sense of depth perception using only one eye and that he has learned to compensate for his loss of peripheral vision by adjusting his head position. His doctor expressed the opinion that Doane is able to function normally because his brain has learned over the years to make subconscious adjustments to compensate for the limitation.

We conclude that Doane is an individual with a disability within the meaning of the ADA. His glaucoma caused permanent blindness in one eye which substantially limits Doane's major life activity of seeing. The manner in which Doane must sense depth and use peripheral vision is significantly different from the manner in which an average, binocular person performs the same visual activity. Doane's brain has mitigated the effects of his impairment, but our analysis of whether he is disabled does not include consideration of mitigating measures. His personal, subconscious adjustments to the impairment do not take him outside of the protective provisions of the ADA.

The city urges us to follow the Fifth Circuit's holding that "a person is not handicapped if his vision can be corrected to 20/200." Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993), cert. denied, 511 U.S. 1011 (1994). Because Doane's

7

vision is correctable to 20/20, the city argues, he is not a person with a disability within the meaning of the ADA. We decline to apply the Fifth Circuit's holding in this case. We must consider each situation on a case by case basis. Doane's vision impairment stems not merely from overall poor eyesight but from total blindness in one eye due to glaucoma, which significantly restricts the manner in which Doane performs the major life activity of seeing. Thus, Doane is a person with a disability entitled to the ADA's protection.

In this case, even if Doane's glaucoma did not actually substantially limit Doane's ability to see, our conclusion would be the same. The ADA's definition of disability includes persons who are perceived as having an impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2)(C). Police Chief Skinner testified that he perceived Doane's visual problem as a significant limitation and that this was the reason he recommended rejecting Doane's employment application. (Appellee's App. at 18-19.) Thus, the evidence demonstrates that the city perceived Doane as having a disability that substantially limited his ability to see. The city cites cases holding that a plaintiff's major life activity of working is not substantially limited by an inability to perform a single job. See, e.g., Wooten, 58 F.3d at 386; Chandler, 2 F.3d at 1391-93; Welsh v. City of Tulsa, Okla., 977 F.2d 1415, 1417-19 (10th Cir. 1992). We do not disagree with this statement of law. The principle is simply inapposite in this case where the major life activity affected is that of seeing, not working. Likewise, the district court did not err by refusing to give the city's requested jury instruction, which explained that an impairment preventing an individual from meeting the requirements of one particular job does not substantially limit the individual's major life activity of working.

8

## B. Qualified for the position

Next, the city argues that Doane was not qualified to perform the essential functions of the position of a sworn police officer. The city's expert testified that binocular vision and peripheral vision are very important in a law enforcement situation and that a person with monocular (one-eyed) vision would have a lower reaction time, rendering that person a danger to himself, fellow officers, and the public. All of the medical experts agree that Doane's peripheral vision is limited.

As noted above, a plaintiff bears the burden to demonstrate not only that he is disabled, but also that he is qualified for the job. To be a "qualified individual with a disability," 42 U.S.C. § 12112(a) (emphasis added), an individual must satisfy "the requisite skill, experience, education and other job-related requirements of the employment position," and "with or without reasonable accommodation," the individual must be able to perform "the essential functions of the position." 29 C.F.R. § 1630.2(m).

In this case, Doane made the requisite showing that his disability does not prevent him from performing the essential functions of the job. He testified to his specific qualifications for the job; for instance, he has the necessary educational background, he has a valid motor vehicle license, he had been a successful police officer for many years, he has remained physically fit, and his eyesight is correctable to 20/20. While the medical experts all agreed that Doane's peripheral vision is limited, the medical experts also testified that Doane has made adjustments that compensate for his limited peripheral vision. Doane demonstrated that the city's job description does

9

not specifically require binocular vision and that he had satisfactorily performed the essential functions of the job in spite of his disability for nine years before his termination in 1984. A reasonable jury could have concluded that Doane could perform the essential functions of the job, and thus Doane sufficiently satisfied his burden to demonstrate that he was qualified for the job.

The city also argues that Doane did not fulfill the procedural requirements of the Omaha Municipal Code when a current employee attempts to change job positions. The city asserts that because Doane was attempting to transfer to a position with a higher maximum salary, he was required to go through an examination process, including a physical and mental examination and a personal interview, as any applicant seeking an original appointment. This argument is without merit. The Municipal Code provides that vacancies may be filled by re-employment as well as original appointment. (See Appellants' Supp. App. at 46.) Memos from city officials indicate that Doane's applications to be rehired as a police officer were treated as applications for re-employment, and thus were not subject to the procedural requirements of an original appointment. Also, Doane specifically testified that he was not permitted to try to engage in any of the testing requirements. We agree with the district court's assessment: "Due to the discrimination of the city of Omaha, the plaintiff was never given the chance to complete these standard preconditions of employment." (Appellant's Adden. at 25.) The jury had sufficient evidence before it from which it could conclude that Doane was qualified, and any technical noncompliance with the personnel code does not undermine the verdict.

10

## C. Remedies

Following entry of the jury verdict, the district court held an evidentiary hearing and awarded remedies of backpay and reinstatement. The city challenges these remedies, arguing that the remedy in this case should be limited to injunctive relief and should not include reinstatement or backpay damages.

The ADA provides that the Title VII remedies apply to any person alleging discrimination on the basis of a disability. 42 U.S.C. § 12117(a). Once a plaintiff proves that an unlawful motive played some part in the employment decision, see 42 U.S.C. § 2000e-2(m), the plaintiff is entitled to relief, including compensatory damages, declaratory judgment, and injunctive relief. Id. § 2000e-5(g)(2)(B); Pedigo v. P.A.M. Transport, Inc., 60 F.3d 1300, 1301 (8th Cir. 1995). The defendant may attempt to limit the relief by showing that it would have made the same decision, even absent consideration of the impermissible factor. If "the employer proves that it would have made the same decision absent consideration of the employee's disability, the remedies available are limited to a declaratory judgment, an injunction that does not include an order for reinstatement or for back pay, and some attorney's fees and costs." Pedigo, 60 F.3d at 1301; see 42 U.S.C. § 2000e-5(g)(2)(B)(i) & (ii).

Because the city failed to prove that it would have taken the same action against Doane had it not considered his blindness in one eye, there is no basis for applying section 2000e-5(g)(2)(B) in this case. A person who has been discriminated against is entitled to the most complete relief possible, and there is a strong presumption that persons who have been discriminated against are entitled to back pay. King v. Staley,

11

849 F.2d 1143, 1144 (8th Cir. 1988). As always, the goal is to make the victim whole. See id. (holding that the district court abused its discretion in failing to award back pay and front pay based on the salary of the position that the victim of discrimination was denied). The district court's discretion was not restricted in this case to imposing injunctive relief.

In determining whether to award reinstatement, any current inability to satisfy all bona fide job requirements is a special circumstance that may render reinstatement inappropriate. Thomlinson v. City of Omaha, 63 F.3d 786, 790 (8th Cir. 1995) (a Rehabilitation Act case); see Wooten, 58 F.3d at 385 n.2 (noting that cases interpreting the Rehabilitation Act of 1973 are instructive in ADA analysis). Because Doane had been out of the police force for a number of years, the district court did not reinstate Doane as a sworn, on-duty police officer but ordered the city to allow him to participate in police recruit training. This provided the city with the opportunity to train Doane and to assess anew his current fitness for the job.[3] Additionally, out of an abundance of caution, the district court provided the city with an opportunity to present evidence demonstrating that Doane was not currently fit for the job. The district court found that the city presented no evidence other than Doane's vision disability to indicate that he was unfit for the job.

The city now argues that the district court erred by shifting to it the burden to demonstrate that Doane was not qualified. We note that the jury instructions indicate that Doane properly bore the initial burden to prove that he was a qualified individual

_____

[3]We were informed at oral argument that Doane had been sworn in as an Omaha police officer two days before.

with a disability, and the jury found in his favor.  That evidentiary burden concerning liability is separate, however, from the issue of whether reinstatement is an appropriate remedy.

The district court shifted the burden on the remedial issue of whether Doane was qualified for reinstatement, relying on Thomlinson v. City of Omaha.  In Thomlinson, the city of Omaha was found to have discharged a fire fighter on the basis of discrimination.  63 F.3d at 789.  When considering the propriety of the district court's order of reinstatement, we stated, "When analyzing whether a former employee is currently qualified for reinstatement, a presumption exists that the former employee remains qualified to perform the job.  The burden shifts to the employer to prove the absence of current qualifications."  Id.  The district court in the present case applied this presumption to determine that Doane was entitled to reinstatement.

The city argues that the Thomlinson presumption does not apply because this is not a wrongful discharge case. We disagree.  The wrongful refusal to rehire situation of Doane's case is sufficiently analogous to the wrongful discharge situation of the  Thomlinson case to invoke the same presumption.   The record here indicates that Doane had successfully performed this job in spite of his disability for nine years before his discharge, and his visual disability was the only reason asserted for his discharge.  Subsequent to his discharge, Doane sought but was denied reinstatement on several occasions due to his visual disability.  Doane's final attempt at reinstatement eight years after his discharge was his first opportunity to seek reinstatement under the ADA, and the city offered no basis for refusing to hire Doane other than his visual disability. Given these circumstances, we conclude that the district court did not err by requiring

13

the city in this wrongful refusal to rehire case to demonstrate that Doane was not qualified for reinstatement, in accordance with the presumption set forth in Thomlinson.

The city also argues that the back pay award should be reduced in light of Doane's alleged failure to mitigate damages. The district court refused to consider the failure-to-mitigate issue because the city did not raise the issue at trial. Even if the issue had been raised earlier, however, the city would not prevail. The city asserts that Doane failed to mitigate damages because he applied only once for re-employment as a police officer and he voluntarily demoted himself to a lower paying job at one point. To the contrary, the record, viewed in the light most favorable to Doane, indicates that Doane made several requests for re-employment as a police officer but was denied consideration each time because of his blindness in one eye. The record also indicates that Doane left the higher-paying dispatcher job to return to the 911 communications job because it was very painful for him to be so closely aligned with police officers yet be denied the opportunity to be one again. Thus, the record would support a finding that Doane did not fail to mitigate damages.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in fashioning an appropriate remedy for the city's discriminatory refusal to rehire Doane.

**III.**

Accordingly, we affirm the judgment of the district court. We also overrule the city's motion to strike portions of the record.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.