EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

EXXON CORPORATION, Defendant.

Civil Action Nos. 3–95–CV–1311–H, 3–95–CV–2537–H.

United States District Court, N.D. Texas, Dallas Division.

July 1, 1997.

Katherine Elizabeth Bissell, Chrys Meador, Carla J. Vogel, Equal Employment Opportunity Commission, Dallas District Office, Dallas, TX, Ann Elizabeth Reesman, Ellen Duffy McKay, McGuiness & Williams, Washington, DC, for Equal Employment Opportunity Commission.

Peter Bennett, Bennett & Associates, Portland, ME, Donald J. Logan, Murphy Logan Bardwell & Day, Napa, CA, John Marshall True, III, Marcie Ellen Berman, Rudy Exelrod Zieff & True, San Francisco, CA, Kathleen A. Herdell, Law Office of Kathleen Herdell, Saint Helena, CA, for U.S.

William C. Strock, Felicity Anne Fowler, Haynes & Boone, Dallas, TX, Sarah Ruth Saldana, Ronald L. Palmer, Baker & Botts, Dallas, TX, Lori E. Romley, Douglas Dexter, O'Melveny & Myers, San Francisco, CA, Douglas Bernard Neagli, Exxon Company USA, Houston, TX, Christopher G. Bell, Jackson Lewis Schnitzler & Krupman, Washington, DC, for Exxon Corporation.

James Severson, Cynthia Jane Woolley, Ulrico S. Rosales, McCutchen Doyle Brown & Eversen, San Francisco, CA, for SeaRiver Maritime Financial Holdings, Inc.

Jennifer Judin, Downs Judin & Stanford, Dallas, TX, for Richard J. Marque, Mark J. Cormier.

Michael Scott McDonald, Littler Mendelson Fastiff Tichy & Mathiason, Dallas, TX, for Institute for Drug–Free Workplace.

Ann Elizabeth Reesman, Ellen Duffy McKay, McGuiness & Williams, Washington, DC, for Equal Employment Advisory Counsel.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are the Findings, Conclusions, and Recommendation of the United States Magistrate Judge, filed November 18, 1996, regarding cross-motions for summary judgment, filed August 23, 1996; objections to the findings and conclusions, filed December 20, 1996; and responses to the objections, filed January 17, 1997. In light of suggestions from counsel, the Court **VACATES** the Memorandum Opinion and Order, filed May 13, 1997, and issues this order in its place.

## I. BACKGROUND

This is an Americans with Disabilities Act ("ADA") case challenging a blanket exclusion of rehabilitated substance abusers from "safety-sensitive" positions. On June 28, 1995, Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this lawsuit against Defendant Exxon Corporation ("Exxon"). The EEOC's lawsuit was filed on behalf of Salvatore Filippone, Glenn Hale and other similarly situated individuals who were adversely affected by Exxon's employment policy because of their participation in substance abuse rehabilitation. On November 15, 1995, the Court consolidated a similar complaint against Exxon and SeaRiver Maritime, Inc. by plaintiffs Allen Hartman and Alfred Trott challenging Exxon's substance abuse policy as applied to rehabilitated employees. On June 25, 1996, the Court granted plaintiffs Mark Cormier and Richard Marque's motion to intervene in the action. Cormier and Marque also complain about Exxon's substance abuse policy as applied to rehabilitated substance abusers. All individuals will be referred to collectively as "Plaintiffs."

In July 1989, Exxon formally adopted its "Statement of Policy Regarding Employee Alcohol and Drug Use." The policy precludes all employees who currently have a substance abuse problem and all employees with a history of substance abuse from working in

designated positions.[1] A designated position is one where (1) there is a high exposure to catastrophic public, environmental, or employee incident; (2) the person in such position performs a key and direct role in the operating process where failure could cause a catastrophic incident; and (3) there is either no direct supervision or very limited supervision. About ten percent of all positions (or 1,500 positions) are designated safety-sensitive.

In its Motion for Summary Judgment, the EEOC argues that Exxon's policy is invalid on its face because it violates the ADA by not providing for individualized assessment. Exxon, in its Motion for Summary Judgment, argues that there is an exception to the ADA's requirement where individualized assessment would be impractical or impossible. In addition, Exxon contends that the risk of relapse of any rehabilitated substance abuser is too great for certain types of jobs such that individual assessment is futile. The Magistrate Judge recommends recognizing such an exception while holding that there is a material question of fact as to whether Exxon can meet the requirements of such exception. For the reasons set forth below, the Court agrees with the Magistrate Judge on this issue.[2]

## II. ANALYSIS OF FACIAL VALIDITY OF POLICY

### A. Qualification Standards

The ADA prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a). To be a "qualified individual," a person must (1) satisfy the job prerequisites and (2) be able to perform the essential functions of the job, with or without accommodation. 29 C.F.R.App. § 1630.2(m).

An employer may raise an affirmative defense to a charge of discrimination by showing that the plaintiff is unable to perform the essential functions of the job because he does not meet a qualification standard. 42 U.S.C. § 12113(a). However, when those qualifications tend to screen out individuals with a disability, the qualifications must be job-related and consistent with business necessity. 42 U.S.C. § 12113(a). Exxon contends that individuals who have had a substance abuse problem are not "otherwise qualified" because they cannot safely perform the essential functions of the designated positions. That is, Exxon is imposing a safety-related qualification on the designated positions.

### B. Direct Threat Test

When the qualification is justified by safety concerns, the employer must also prove that the individual excluded poses a direct threat to the health or safety of others. 42 U.S.C. § 12113(b); *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 764 (5th Cir.1996). Congress imposed this burden on employers because of a concern that safety standards are often based on stereotypes and used by employers to rationalize discrimination. 29 C.F.R.App. § 1630.2(r).

To constitute a direct threat, the group affected by the policy must pose "a significant risk of substantial harm to themselves or others that cannot be reduced or eliminated by a reasonable accommodation." 42 U.S.C. § 12111(3). According to the EEOC's regulations, "the determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r). *See also Rizzo,* 84 F.3d at 763 (citing this general rule where the employer did not attempt to raise an impracticality defense).

■ The EEOC argues that Exxon's policy is facially invalid because it does not pro-

---

1. The policy provides:
 No employee with alcohol or drug dependency will be terminated due to the request for help with overcoming that dependency or because of involvement in a rehabilitation effort. However, an employee who has had or is found to have a substance abuse problem will not be permitted to work in designated positions identified by management as being critical to the

safety and well-being of employees, the public, or the Corporation ...

2. The Magistrate Judge makes recommendations on other aspects of the motions for summary judgment. These other recommendations are not properly before the Court and will not be addressed at this time. *See* section IV, *infra.*

vide for individualized assessment. Exxon argues that individualized assessments should not be required to show direct threat where, as here, they are impractical. It contends that individualized assessments are impractical because of the nature of addiction and the unpredictability of relapse. Whether the ADA requires an individualized assessment where such assessment would be impossible or impractical is an issue of first impression.

## C. Exception to Individualized Assessment Requirement

After analyzing the text of the ADA, the statute's legislative history, ADA caselaw, and precedent under other employment discrimination statutes, the Court concludes that an employer need not satisfy the direct threat test via individualized assessment if that employer can prove that it is impossible or impractical to individually assess each employee affected by the policy. However, even if an employer shows that individualized assessment is impractical, he must still satisfy the direct threat test by showing that the group affected by the policy constitutes a significant risk of substantial harm to themselves or others that cannot be reduced or eliminated by reasonable accommodation. *See* 42 U.S.C. § 12111(3); 42 U.S.C. § 12113(b).

### 1. Text of the ADA

There is nothing in the express language of the Act which requires an individualized assessment of job applicants. The statute simply defines direct threat and states that employers may use qualification standards which disqualify individuals who pose such a threat, even if such standards discriminate on the basis on disability. 42 U.S.C. § 12113(a), (b). When a statute is silent on an issue, the Court defers to the construction set forth by the agency entrusted with the administration of the statute. *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). While the regulations require an individualized assessment, *see* 29 C.F.R. § 1630.2(r), both the regulations and the statute are silent on the issue of the proper response to an assertion by an employer that individualized assessment is impossible or impractical.

### 2. Legislative History of the ADA

The legislative history reflects a balance between discouraging reliance on unfounded stereotypes and providing employers with flexibility to deal with safety concerns. On the one hand, Congress was concerned with the use of stereotypes based on irrational fears and misperceptions to justify discrimination against disabled individuals. See H.R.Rep. No. 485(II), 101st Cong., (2d Sess.) 56 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 303. To that end, Congress required that qualification standards be related to essential job functions and be consistent with business necessity. *Id.* at 71. In addition, Congress mandated that safety-related qualification standards may only be used to screen out individuals who pose a direct threat to the health or safety of others. *Id.* at 56. The employer must adduce actual proof that the individual poses a significant risk. H.R.Rep. No. 485(III), 101st Cong., (2d Sess.) 46 (1990), reprinted in 1990 U.S.C.C.A.N. 445.

On the other hand, Congress was aware of the particular problems posed by substance abuse and addiction. *See* H.R.Rep. No. 485(II), 101st Cong., (2d Sess.) 77–80 (1990), reprinted in 1990 U.S.C.C.A.N. 303. For example, 42 U.S.C. § 12114 excludes individuals currently engaging in the illegal use of drugs from coverage under the ADA. In addition, the statute explicitly states that employers may comply with the Department of Transportation, Department of Defense, and Nuclear Regulatory Commission standards and regulations regarding substance abuse. 42 U.S.C. § 12114(c). This section was included in the ADA "because of concerns regarding employees in sensitive positions." H.R.Rep. No. 485(II), 101st Cong., (2d Sess.) 78–79 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 361. Moreover, there is no indication in the statute or legislative history that Congress intended to prohibit employers from defending blanket policies based on reliable, credible proof that individualized assessments are impossible in light of significant safety concerns.

### 3. ADA Cases

There are presently no cases addressing whether individualized assessments are required when such assessments would be impractical or impossible. However, cases on other aspects of the ADA lend support to finding an exception to the individualized assessment requirement. First, there is Fifth Circuit precedent upholding a blanket exclusion under the ADA. In *Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996), the court upheld a blanket exclusion that disqualified individuals with insulin dependent diabetes and impaired vision from driving city vehicles because such individuals, as a matter of law, presented a substantial safety risk. As a point of distinction, however, the case relied upon governmental regulations specifically listing insulin dependent diabetes and impaired vision as *per se* disqualifications.

Second, as courts define the scope of the ADA's coverage of employees who have illegally used drugs, they underscore the need to protect employers from the risks posed by recently rehabilitated employees. As mentioned above, the ADA specifically excludes employees "currently engaged in the illegal use of drugs." 42 U.S.C. § 12114(a). However, subsection (a) does not exclude as a qualified individual with a disability an individual who is no longer using illegal drugs and who is participating in a drug rehabilitation program or who has completed such a program or has otherwise been rehabilitated. 42 U.S.C. § 12114(b). Courts construing the meaning of "currently", although declining to create a bright-line distinction, hold that a person must be drug-free for a considerable period and in recovery long enough to have become stable to be covered by the ADA. *See McDaniel v. Mississippi Baptist Medical Center*, 877 F.Supp. 321, 328 (S.D.Miss.1994), *aff'd*, 74 F.3d 1238 (5th Cir.1995) (employee who was drug-free for six weeks and had completed two-and-a-half week inpatient drug treatment was still "current user" and not covered by ADA). *See also Shafer v. Preston Memorial Hospital Corp.*, 107 F.3d 274, 278 (4th Cir.1997) (employee who used drugs during the weeks prior to her discharge is current user and excluded even though she was not using drugs on the day she was fired); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir.1995) (employees who used drugs during weeks and months prior to discharge excluded even though they were drug-free at time of discharge), *cert. denied*, —— U.S. ——, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996); *Baustian v. State of Louisiana*, 910 F.Supp. 274, 276 (E.D.La.1996) (seven week drug-free period not long enough to avoid being classified as current drug use).

### 4. Other Employment Discrimination Statutes

The Rehabilitation Act, the Age Discrimination in Employment Act ("ADEA"), and Title VII also provide guidance because these statutes are similar in purpose to the ADA and have often been relied upon in interpreting the ADA. *See Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir.1996); *Rizzo*, 84 F.3d at 760 n. 2; *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995); *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157–58 (3rd Cir.1995); *Henry v. Guest Services, Inc.*, 902 F.Supp. 245, 250 (D.D.C. 1995), *aff'd*, 98 F.3d 646 (D.C.Cir.1996). *See also McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 357, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995) (citing the ADA and Title VII and finding that the ADEA is "part of a wider statutory scheme to protect employees in workplaces nationwide"). Rehabilitation Act caselaw is especially persuasive given that the ADA is modeled after the Rehabilitation Act and Congress has directed that the two acts' judicial and agency standards be harmonized. *See* 29 U.S.C. § 791(g); 29 U.S.C. § 793(d); 29 U.S.C. § 794(d); 42 U.S.C. § 12117(b); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 162 (5th Cir.1996); *Bridges v. City of Bossier*, 92 F.3d 329, 334 n. 7 (5th Cir.1996); *Newman*, 60 F.3d at 157–58; *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 n. 14 (5th Cir.1995).

Rehabilitation Act cases permit blanket safety-based exclusions where "requirements are directly connected with and substantially promote legitimate safety and job performance concerns." *Davis v. Meese*, 692

F.Supp. 505, 517 (E.D.Pa.1988), *aff'd*, 865 F.2d 592 (3rd Cir.1989). *See Bentivegna v. United States Dept. of Labor*, 694 F.2d 619, 621–22 (9th Cir.1982) (employer had the burden of proving that its blanket policy was reasonably required to protect health and safety). *See also School Board of Nassau County v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 1130–31, 94 L.Ed.2d 307 (1987) (to determine whether plaintiff was otherwise qualified under Rehabilitation Act, employer must conduct individualized inquiry "in most cases");

Blanket exclusionary policies based on safety concerns have been held permissible under the ADEA and Title VII where (1) safety is reasonably necessary to the essence of the business; and (2) the employer had reasonable cause to believe all or substantially all employees disqualified would be unable to perform safely the job duties, or could establish that it is impossible or highly impractical to individually assess disqualified employees. *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 413–16, 105 S.Ct. 2743, 2751–53, 86 L.Ed.2d 321 (1985) (ADEA case adopting the test from *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 234–35 (5th Cir.1976)); *Levin v. Delta Air Lines*, 730 F.2d 994, 996 (5th Cir.1984) (relying on *Usery* to justify blanket exclusionary policy in Title VII context).

In this case, Exxon justifies its blanket exclusion by claiming that it is impossible or impractical to *reliably* predict an individual's relapse into substance abuse. Similarly, deciding whether individualized assessments are impossible or impractical under these statutes has often hinged on the reliability of predicting the condition underlying the safety concern. *See Levin*, 730 F.2d at 998 (inability to predict which pregnant flight attendants will suffer ailments makes it difficult for Delta to deal with them on an individualized basis); *EEOC v. University of Texas Health Science Center at San Antonio*, 710 F.2d 1091, 1097 (5th Cir.1983) (upholding blanket policy against hiring campus police officers beyond the age of 45 because objective testing of individuals for physical and psychological abilities is difficult and seriously uncertain); *EEOC v. El Paso Natural*

*Gas Co.*, 626 F.Supp. 182, 187 (W.D.Tex.1985) (airline may establish a blanket policy mandating retirement at a certain age where there is no satisfactory means to individually evaluate the safety risk due to age-related deterioration), *appeal dismissed*, No. 86–1128, 1986 WL 22204 (5th Cir. April 24, 1986).

### 5. Effect of Exception

 Therefore, based on the above analysis of the ADA and related statutes, the Court concludes that employers need not perform individualized assessments to determine whether an employee poses a direct threat if such assessment would be impractical or impossible. However, after considering the pleadings, briefs, and the relevant authorities, the Court is of the opinion that there are genuine issues of material fact which preclude summary judgment on whether individualized assessments are impossible or impractical in this case. *See* Fed. R.Civ.P. 56(c). Because the Court cannot say at this time whether it is impossible for Exxon to perform individual assessments, the EEOC has not shown that Exxon's policy is invalid on its face and its motion must be denied.

The burden is now on Exxon to show that individual assessment is impossible or impractical. Even if it does so, it must still satisfy the direct threat test by showing that rehabilitated employees as a group constitute a significant risk of substantial harm to themselves or others that cannot be reduced or eliminated by reasonable accommodation. See 42 U.S.C. § 12111(3); 42 U.S.C. § 12113(b).

### III. REMAINING ISSUES

The remaining issues raised in the motions for summary judgment and objections—whether Plaintiffs have a disability as defined by the ADA; whether Plaintiffs are "qualified individuals"; whether Exxon's policy can be justified under the general business necessity standard based on potential tort liability; whether Exxon reasonably accommodated Plaintiffs; whether, and to what extent, Exxon is required to make individualized assessments; and whether Exxon has unlawfully discriminated against Plaintiffs

**214**

because of their disability—are not properly before the Court at this time. On July 2, 1996, the Court held a conference to discuss the briefing schedule for this case. At the conference, the Court stayed all discovery and ordered briefing on whether the policy is facially valid. *See* Transcript at 31 (Judge Sanders: "But what I want to do is to see if it can be handled as a question of law on facial validity versus invalidity."); at 33 (Judge Sanders: "The issue is the validity or invalidity, the facial validity or invalidity of this policy"); 39 (Judge Boyle: "But that really goes to the issue of whether or not these people meet the definitional prerequisites ... but I don't see that that is even necessary at this point, if we're deciding the facial validity of the policy ...") Both parties recognized that briefing was to be limited to facial validity. *See* Defendants' Motion to Strike, filed September 3, 1996 ("At the time the briefing schedule was set, the Court made clear that the issue to be addressed in the cross-motions would be the facial validity or invalidity of Defendants' drug and alcohol policy, specifically excluding issues of implementation or individual application for the time being."); Plaintiffs' Motion for Summary Judgment, filed August 9, 1996 (which was limited to issue of facial validity).

## IV. CONCLUSION

The findings, conclusions and recommendations of the United States Magistrate Judge are **ADOPTED** in part and **REFUSED** in part. After considering the text of the ADA, the statute's legislative history, ADA caselaw, and precedent under other employment discrimination statutes, the Court concludes that the ADA does not prohibit blanket policies based on safety-related concerns if an employer can establish that it is impossible or impractical to individually assess each employee affected by the policy. However, whether Exxon can meet the exception is a question of material fact. Therefore, the Court cannot say at this time whether Exxon's policy excluding rehabilitated substance abusers from safety-sensitive positions is invalid on its face. Accordingly, the EEOC's Motion for Summary Judgment

is **DENIED** and Exxon's Motion for Summary Judgment is **DENIED**.

SO ORDERED.