**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,**

v.

**UNION PACIFIC RAILROAD,
Defendant.**

**No. 96–0282–E–BLW.**

United States District Court,
D. Idaho.

Jan. 23, 1998.

A. Luis Lucero, Jr., Barbara J. Standal, Stephen M. Randels, Claire Cordon, U.S. Equal Employment Opportunity Commission, Seattle, WA, for Equal Employment Opportunity Commission, plaintiff.

Larry A. Gantenbein, Morris O. Haggerty, Union Pacific Railroad, Law Dept., Salt Lake City, UT, for Union Pacific Railroad Company, defendant.

## ORDER

WINMILL, District Judge.

The Court has before it a Report and Recommendation filed by the United States Magistrate Judge. The Court has examined the Report pursuant to 28 U.S.C. § 636(b)(1) and finds that it accurately sets forth the facts and correctly applies the governing legal standards, the objections of Defendant Union Pacific Railroad ("UPRR") notwithstanding.

UPRR objects to the following conclusions of the Report: (1) that Barry Warburton's major life activity of seeing is impaired on account of his monocular vision; (2) that UPRR treated Warburton as if he were disabled by his monocular vision; and (3) that UPRR failed to create a genuine issue of material fact as to whether Warburton's monocular vision posed a direct threat to the safety of others in the workplace. The first two conclusions to which UPRR objects were alternate grounds for the Magistrate Judge's holding that Warburton was disabled by his monocular vision within the meaning of the Americans with Disabilities Act ("ADA"). The Court will examine each conclusion in turn. In the course of doing so, the Court will not reiterate the facts of the case as set forth by the Magistrate Judge, but instead may refer to those facts and to additional facts in the record as necessary to give form to the Court's reasoning.

### *Warburton's Major Life Activity of Seeing is Impaired*

A person is disabled within the meaning of the ADA if he has an impairment that "substantially limits" one of his "major life activities." 42 U.S.C. § 12102(2)(A). An impairment is substantially limiting if it "significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity." 29 C.F.R. pt. 1630, app. § 1630.2(j). "The determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices." *Id.* Seeing is a major life activity. *See* 29 C.F.R. § 1630.2(i).

The Magistrate Judge closely followed the reasoning of the Eighth Circuit in *Doane v. City of Omaha,* 115 F.3d 624 (8th Cir.1997), in concluding that Warburton's monocular vision substantially limited his major life activity of seeing. In *Doane,* the Eighth Circuit concluded that, even though the monocular-sighted plaintiff's vision was 20/20 in his functioning eye, the plaintiff's major life activity of seeing was substantially limited because he had to "sense depth and use peripheral vision [in a manner] significantly different from the manner in which an average, binocular person performs the same visual activity." *Id.* at 627.

In this case, Warburton's vision is nearly 20/20 in his functioning eye, and Plaintiff Equal Employment Opportunity Commission ("EEOC") adduced expert testimony on his behalf similar to that adduced by the plaintiff in *Doane*—that the manner in which Warburton sees peripherally and senses depth is fundamentally different from the manner in which those with binocular vision do so.

The *Doane* court went on to conclude that the fact that the plaintiff's brain had adjusted to his monocular vision, and had thereby mitigated the effects of it to some degree, did not remove him from the ADA's protection. *See id.* at 627–28. In this case as well, EEOC adduced expert testimony that Warburton's brain had compensated for his monocular vision, rendering him able see well enough to function normally. As such, the Magistrate Judge continued to follow *Doane*. The Court agrees with UPRR that there seems to be some dissonance to finding both that Warburton's monocular vision substantially impairs his ability to see and that Warburton is able to see essentially as well as a normal person, albeit through different mechanisms. However, that seeming dissonance is sanctioned by the rule of law that mitigating measures are not to be taken into account in determining whether a person's major life activities have been substantially limited by a disability, and is certainly less dissonant than UPRR's argument that Warburton is not disabled by his monocular vision, but that his monocular vision nonetheless makes him a direct threat to others if he drives an automobile in the Pocatello, Idaho, railyard.

Had the mitigating measures that allow Warburton to overcome his monocular vision been provided by medical science instead of by his brain's natural processes, the *Doane* court's conclusion would be unavoidable. Instead, it is merely persuasive. There is no apparent logic to excluding from consideration artificial mitigating measures, but considering natural mitigating measures. The fact that Warburton's brain has on its own compensated for his monocular vision to some degree, even to a large degree, does not alter the fact that Warburton sees under substantially different conditions than those with binocular vision.

*Doane* and this case are indistinguishable, and the Court concludes, as did the Magistrate Judge, that *Doane* is soundly reasoned. The Court notes that the Fifth Circuit, in a *per curiam* opinion, held that monocular vision does not substantially limit the major life activity of seeing, at least where the brain has largely compensated for the impairment. *See Still v. Freeport–McMoran, Inc.*, 120 F.3d 50 (5th Cir.1997). Because the Court believes that *Doane* is better reasoned and more similar factually, the Court will follow *Doane*.

Moreover, the Court concludes that Warburton's own deposition testimony that his major life activities are not impaired by his monocular vision is not particularly significant in reaching a legal conclusion on his impairment within the meaning of the ADA. Although Warburton can function normally despite his monocular vision, he goes about seeing in a manner that is fundamentally different from the manner in which a person with binocular vision sees. His brain's partial compensation for his disability does not change this ultimate fact. For these reasons, the Court concludes as a matter of law that Warburton's major life activity of seeing is impaired. Thus, Warburton has demonstrated as a matter of law that he is disabled by his monocular vision within the meaning of the ADA.

### UPRR Treated Warburton as if He Were Disabled

■ A person is also disabled within the meaning of the ADA if he has an impairment that does not substantially limit one of his major life activities, "but is treated by a covered entity as constituting such a limitation." 29 C.F.R. § 1630.2(*l*)(1). The Magistrate Judge concluded that UPRR, a covered entity, treated Warburton as being substantially limited in the major life activity of seeing on account of his monocular vision. As such, even if Warburton's ability to see was not substantially limited, Warburton could avail himself of the protections of the ADA because UPRR considered it to be so.

EEOC submitted overwhelming evidence that UPRR considered Warburton's monocular vision to substantially limit his ability to

see. The Court will not list all such evidence. It is enough to note that UPRR undisputedly removed Warburton from his job, which required him to drive, because of its belief that he could not see well enough with his functioning eye to do so safely, and that the UPRR employee who made the decision to remove Warburton from his job, Dr. Dean Wampler, concurrently proposed an internal rule change forbidding all monocular-sighted persons from holding driving positions with UPRR. Based on these facts and other undisputed evidence, it is obvious that UPRR considered Warburton to be significantly impaired in his ability to see.

UPRR argues in its defense that the only relevant major life activity is that of *working*, not seeing, because of Warburton's aforementioned deposition testimony that he could function normally, despite his monocular vision. UPRR, however, does not have enough fingers to plug the holes in this crumbling dike of an argument. Warburton's ocular impairment, as a matter of logic, plainly impacts his major life activity of seeing, as EEOC has argued throughout this case. Whether it also impacts his major life activity of working is irrelevant because EEOC has not so argued. As the plaintiff, EEOC is in charge of defining its claims. Warburton's deposition testimony cannot convert EEOC's claim that Warburton's monocular vision impacts his ability to see into a claim that it impacts his ability to work.

For these reasons, the Court concludes as a matter of law that UPRR treated Warburton as if his major life activity of seeing were impaired by his monocular vision. This conclusion forms an alternate ground for the Court's holding that Warburton is disabled as a matter of law within the meaning of the ADA.

### UPRR Did Not Factually Support Its "Direct Threat" Defense

■ UPRR defended EEOC's ADA claim in part on the ground that Warburton's monocular vision posed a direct threat to the safety of others in the workplace. UPRR bears the burden of proving this defense. *See* 29 C.F.R. § 1630.2(r). Whether a person poses such a direct threat must be determined based upon an "individualized assessment of [his] present ability to safely per-

form the essential functions of the job." *Id.* In making the required individualized assessment, the employer must consider the following factors: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm. *See id.*

UPRR did not make such an individualized assessment. Dr. Wampler admitted to having considered only four factors in deciding to remove Warburton from his job: (1) his belief that an internal rule forbade monocular-sighted persons from holding driving positions; (2) Warburton's monocular vision; (3) Warburton's driving accident in the Pocatello railyard; and (4) an eye examination performed after the accident by Dr. Charles Lawless of Pocatello. The first and fourth factors unquestionably do not support the decision. Dr. Wampler's superior, Dr. Dennis Richling, disagreed that the internal rule forbade monocular-sighted persons from holding driving position, and Dr. Lawless concluded that Warburton's eyesight was within legal driving parameters, and Warburton is in fact a licensed driver. With regard to the second factor, UPRR adduced no expert testimony to rebut the expert testimony introduced by EEOC to the effect that Warburton's monocular vision does not render him unable to function normally because of the compensatory mechanisms utilized by his brain in the approximately 30 years since he lost his sight in one eye. Finally, with regard to the third factor, UPRR admitted that it possessed only rank speculation at the time of Warburton's removal that his monocular vision contributed to the accident. For these reasons, the Court holds as a matter of law that UPRR failed to make the required individualized assessment and is therefore unable to bear its burden of proof on its "direct threat" defense.

■ UPRR argues that it was excused from making the ordinarily-required individualized assessment because doing so was impossible, citing *EEOC v. Exxon Corp.*, 967 F.Supp. 208, 211 (N.D.Tex.1997). Even if the fact of impossibility would excuse UPRR from doing so, UPRR has not created a genuine issue of material fact as to whether

it was impossible to make the individualized assessment of the harm posed by Warburton continuing in his driving job. Neither Dr. Wampler nor Dr. Richling is an optometrist or an ophthalmologist. Dr. Lawless, the only such medical professional consulted by UPRR, made an unqualified determination that Warburton was competent to drive, despite his monocular vision. Wampler and Richling made no attempt to examine the scene of the accident. They did not consult Dr. Lawless or any other comparable professional, nor did they consult any studies or other literature, on the subject of the ability of monocular-sighted persons to drive safely. Moreover, they made no assessment of whether driving in the Pocatello railyard is somehow more difficult or dangerous than driving on public roadways, as Warburton was undisputedly qualified to do.[1] It strikes the Court that UPRR could have assessed Warburton's ability to drive safely in the Pocatello railyard in part by extrapolating from studies on the ability of monocular-sighted persons to drive safely on public roadways. UPRR simply submitted no evidence that such an extrapolation would be unhelpful or impossible to make.

For these reasons, the Court concludes that there is no genuine issue of material fact as to whether UPRR could have made an individualized assessment as to Warburton's ability to safely perform his job, and that UPRR did not do so. Accordingly, the Court concludes as a matter of law that UPRR cannot sustain its "direct threat" defense. Since EEOC has made its prima facie case, and UPRR cannot demonstrate a legitimate, nondiscriminatory reason for removing Warburton from his job, EEOC is entitled to summary judgment on the issue of whether UPRR violated the ADA by doing so. Accordingly, UPRR's motion for summary judgment must be denied. Trial on the issue of damages will proceed at the time and place set by previous order of this Court.

### ORDER

Based on the foregoing and the Court being fully advised in the premises,

·NOW THEREFORE IT IS HEREBY ORDERED, that the Report and Recommendation (Docket No. 45) shall be, and the same is hereby, ADOPTED as the decision of the District Court and incorporated fully herein by reference.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Plaintiff's motion for summary judgment on the issue of liability (Docket No. 15) shall be, and the same is hereby, GRANTED, and that Defendant's motion for summary judgment (Docket No. 21) shall be DENIED. This action shall proceed to a trial limited to the issue of Plaintiff's damages at the time and place previously designated by order of this Court.

---

1. Granted, automobile collisions with trains are likely to be more serious than collisions with other automobiles. Of course, railyards are not the only place where trains are present and may possibly collide with automobiles.